THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:09CR460 DS |
| Plaintiff, | |
| | MEMORANDUM OPINION AND ORDER ADDRESSING DEFENDANTS' MOTION TO SUPPRESS |
| vs. | |
| LESTER HEMMERT MOWER, EVA JEANETTE MOWER, ADRIAN ANGUS WILSON, and NATHAN WHITNEY DRAGE, | |
| Defendants. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Defendant Adrian Wilson filed a motion to suppress evidence obtained in a search of the premises located at 9672 South 700 East. Defendant Lester Mower joined in this motion to suppress. In their motion, Defendants assert that the Government conducted a warrantless search and seizure and that all evidence obtained as a result of the search should be suppressed. Because of the sworn affidavits and hearing transcripts available on this issue, the Court finds that an additional evidentiary hearing is not necessary to make its ruling.

**I. RELEVANT FACTS**

On March 17, 2009, agents from the Internal Revenue Service and the U.S. Small Business Administration served a search warrant at D&D Financial Service, Inc. (D&D), a company owned by Mr. Downward, located at 9672 South 700 East, Suite 201, Sandy, Utah

84091. The search warrant was for a criminal investigation involving Mr. Downward and was unrelated to Adrian Wilson or Lester Mower. During service of the warrant, IRS Agent Curtis noticed several boxes of documents belonging to Wilson and explained to Mr. Downward that a grand jury subpoena was going to be issued to him for the Wilson records. Mr. Downward left his office on the day of the search around 2:15 p.m.. Agent Curtis advised Downward that he could continue to remain at his office, but that he was free to go if he wished. Curtis also advised Mr. Downward that if he chose to leave the office, he would not be allowed to return until after the search was completed.

After Mr. Downward left his office, he called defendant Wilson's attorney, Peter Stirba, and left him a message. Downward also called another attorney to obtain legal advice about the search warrant, but learned he had a conflict with one of Mr. Downward's clients. Downward did not contact an attorney to obtain personal legal advice about the subpoena, and he never got in touch with Stirba.

At approximately 6:45 p.m. that evening, Agents Curtis and James went to Mr. Downward's home in Sandy, Utah to attempt to serve the subpoena. Mr. Downward was not home. Agent Curtis reached Mr. Downward by telephone later that evening and indicated to Downward that he had a grand jury subpoena for the documents belonging to Wilson. The call came sometime between 7:30 p.m. and 8:00 p.m. and they arranged to meet at a 7-Eleven next door to Mr. Downward's location. At the 7-Eleven, Curtis served Downward with the grand jury subpoena commanding the production of all documents pertaining to Adrian Wilson, Lester Mower, and Nathan Drage.

Agent Curtis indicated that he could take possession of the requested documents on the

same night that he served the subpoena. There was some discussion as to whether the documents could be given to the agents that night and whether Mr. Downward needed to appear on the return date of March 25, 2009 reflected on the subpoena. Curtis told Downward that the agents could take the records that night as a convenience to Downward and the agents, or Downward could mail them himself, although that would be expensive and hard to do.

Curtis explained that in addition to the ten boxes of Wilson records Mr. Downward had identified earlier in his office bathroom, another box of Wilson records had been located in a front office, in addition to two folders containing Wilson records which had been located on the floor of Mr. Downward's personal office. Curtis told Mr. Downward that these additional records were also covered by the subpoena and Curtis confirmed that one of the two folders contained some documents bearing Nathan Drage's name. The agents then went to D&D Financial alone and obtained the approximately eleven boxes of documents which had been identified earlier pertaining to Wilson, Mower and Drage.

## II. ANALYSIS

Mr. Wilson argues that the Government unlawfully conducted a warrantless search and seizure in violation of the Fourth Amendment of the United States Constitution and that all evidence obtained as a result of the search should be suppressed. In support of his argument, Wilson states that the federal agents in this case unlawfully converted the subpoena into a search and seizure warrant through coercion. Courts have stated that a "subpoena duces tecum may not be used in such a way as to impinge upon Fourth Amendment rights." United States v. Re, 313 F. Supp. 442, 447-448 (S.D.N.Y. 1970)(citing Boyd v. United States, 116 u.S. 616 (1886), Hale v. Henkel, 201 U.S. 43 (1886), and other lower court decisions). However, in this case, nothing

3

in the record is indicative of an unlawful search or seizure taking place.

Mr. Downward had several hours' notice that a grand jury subpoena would be forthcoming. He had ample opportunity to contact an attorney should he so choose. Additionally, when the subpoena was served on Mr. Downward, the questions that arose in his discussion with the agents centered around issues of convenience of delivering the records and whether his personal appearance was demanded by the subpoena. The records were not obtained that night in response to a coercive interaction, rather the record indicates that Mr. Downward allowed the agents to take the boxes of records at that time as a convenience to himself and to the agents. The agents apprised Mr. Downward of his options with respect to compliance with the subpoena. The record reflects that at no time did the agents threaten or coerce Mr. Downward into producing the Wilson records immediately.

Further, Mr. Downward had already gathered and boxed the Wilson records prior to the subpoena being served. The agents did not conduct a search themselves, or choose to seize the documents. Agent Curtis explained to Mr. Downward that in addition to the ten boxes of Wilson records Mr. Downward had identified earlier, another box of records had been located pertaining to Wilson in addition to two folders that were all covered under the subpoena. Curtis identified those records to Downward who did not object to the transfer or request a review of the records before agreeing to produce them. Mr. Downward did not ask to return to his office, nor did he express concern with the logistics of the agents taking the records from the office; only that he was in compliance with the subpoena.

The government served Mr. Downward with a grand jury subpoena and therefore

proceeded under process of law.[1]  Mr. Downward complied with the subpoena voluntarily and not under any threats of coercion.  The agents did not attempt to deliberately mislead Mr. Downward into thinking that his only choice was to provide the documents that night.  He was given the choice of shipping the boxes himself, or letting the agents take the documents with them.  Mr. Downward voluntarily chose the latter.  Accordingly the subpoena was not converted into an unlawful search and seizure.[2]

### III.  CONCLUSION

Having reviewed the motion and the government's response, the Court denies the defendants' motion.  Consequently, the defendants' Motion to Suppress Evidence Obtained in the Search of the Premises Located at 9672 South 700 East, Suite 201 is DENIED.
.

DATED this 27th day of April, 2010.

BY THE COURT:

*[signature: David Sam]*

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[1] Wilson argues that Mr. Downward was not authorized to release Mr. Wilson's documents to the government.  However, because the government proceeded under process of law by serving Mr. Downward with a grand jury subpoena, this point is moot.

[2] Wilson also argues that the subpoena was invalid as the records were obtained when the grand jury was not in session to receive them.  However, because this Court has determined that the government did not demand production of the records the night the subpoena was issued, this argument is also moot.