THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:09CR460 DS |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER ADDRESSING DEFENDANTS' MOTION TO SUPPRESS |
| vs. | ) | |
| | ) | |
| LESTER HEMMERT MOWER, EVA JEANETTE MOWER, ADRIAN ANGUS WILSON, and NATHAN WHITNEY DRAGE, | ) ) | |
| | ) | |
| Defendants. | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Defendant Adrian Wilson filed a motion to suppress evidence obtained in a search of the premises located at 4766 Holladay Blvd. Defendant Lester Mower, Eva Jeanette Mower and Nathan Drage joined in this motion to suppress. In their motions, Defendants assert that the Government's actions were unconstitutional in executing the search of the premises located at 4766 Holladay Blvd. and in handling evidence obtained from a law office and this has resulted in the Government improperly obtaining privileged materials. Defendants are therefore asking that all of the evidence obtained in the search of the premises on March 7, 2006 and March 8, 2006 be suppressed.

**I. RELEVANT FACTS**

On March 7, 2006, the Government obtained and subsequently executed a search warrant

on premises located at 4766 S. Holladay Blvd., Holladay, Utah and seized electronic media and paper documents. These premises are the location of a law office operated by Nathan Drage. In addition to Drage, two of Drage's clients who are also defendants in this case, Adrian Wilson and Les Mower conduct business from offices located on the premises. On March 8, 2006, the government executed a second, follow up search warrant at this address.

Government agents segregated material into 17 boxes classified by the Government as "potentially privileged", and 46 remaining boxes of documents and three boxes of electronic media. The 17 boxes were stored at the United States Attorney's Office in Salt Lake City under the supervision of Government "Taint Team" attorneys. The remaining 49 boxes of documents and media were stored at the Internal Revenue Services offices in Salt Lake City. On March 14, 2006, the Government directed Drage, Wilson and Mower to review all paper documents and assert privileges on or before May 1, 2006. Additionally, the Government directed Drage, Wilson and Mower to review electronic media and assert privileges of the same by June 5, 2006.

On June 14, 2006 the Government petitioned the Court to order Drage, Wilson and Mower to review the documents and assert privilege by a date certain or risk waiver of the privilege. On July 17, 2006 the Court ordered Drage, Wilson and Mower to review all of the documents contained in the 49 boxes stored at the IRS offices and assert privilege by October 4, 2006. At a hearing on August 7, 2006, the court ordered the Government to identify the privileged documents in the 17 boxes at the U.S. Attorney's Office by September 6, 2006. Drage, Wilson, and Mower were given until October 4, 2006 to identify and assert privilege as to any of the remaining documents in the 17 boxes at the U.S. Attorney's Office.

Wilson and Drage provided a privilege log identifying privileged documents contained in

the 46 boxes to the Government on September 13, 2006. The Government subsequently argued those logs lacked specificity. The Government identified as privileged and mailed a one-inch stack of documents culled from the 17 boxes at the U.S. Attorney's Office to Drage on September 12, 2006. Drage, Wilson and Mower objected that the Government's review was not meaningful as evidenced by the small number of documents admitted by the Government to be privileged. Drage, Wilson and Mower further objected that the Government should have proceeded by subpoena, that the process put them in the position of assisting the Government by explaining the context of the documents, that the review the Government expected them to perform would force them to waive privileges, and that the process exposed them to substantial financial burdens even before they were charged with crimes.

On November 7, 2006 the Court ordered Drage, Wilson and Mower to review the documents in the 17 boxes at the IRS and make privilege claims regarding those documents by December 15, 2006. Drage Wilson and Mower appealed the Magistrate Judge's order to the District Court and on March 12, 2007, the District Court affirmed the Magistrate Judge's order. Drage, Mower and Wilson appealed the District Court's order to the United States Court of Appeals for the Tenth Circuit. On July 23, 2007, the Tenth Circuit dismissed the appeal for lack of appellate jurisdiction on the basis that the District Court's order was not a final order subject to immediate appellate review.

On August 27, 2007 the Magistrate Judge ordered Drage, Wilson and Mower to claim privilege "document by document" with respect to the 17 boxes and directed the Government to complete its review of Respondents' privilege log claims by September 14, 2007. On August 31, 2007 Drage filed a position statement asserting Fifth Amendment privilege and other concerns

3

arising out of the privilege review process ordered by the Court. The Government offered to negotiate an immunity agreement to protect Defendants' rights through the review process, but the immunity negotiations subsequently broke down and an agreement was never reached.

At a hearing on January 23, 2008, the Government offered to permit limited time for Drage, Mower and Wilson to complete a final attorney work-product privilege assertion. Defendants responded that their Fifth Amendment privileges would be impaired by further participation in the process of claiming attorney-client privilege and the Government withdrew its motions for orders directing Drage, Mower and Wilson to assert privilege.

On June 30, 2009, the Government obtained a grand jury indictment against the four defendants named above. The defendants were arraigned on August 5, 2009. On or about July 29, 2009, August 17, 2009, and September 21, 2009, Michael Kennedy of the Government's taint team returned documents it had determined were privileged contained in the 17 boxes of seized documents, as well as the 49 boxes of additional seized documents.

## II. ANALYSIS

### A. Neither the Search Warrant or Search in this Case were in Violation of the Fourth Amendment

Defendants argue that the Government wrongfully proceeded through a search warrant that was in violation of the Fourth Amendment and therefore all evidence obtained should be suppressed.[1] The Fourth Amendment of the United States Constitution guarantees "(t)he right of

---

[1] Defendants argue that the Government should have obtained the documents by subpoena rather than by search warrant against the advise of policies identified in the United States Attorney's Manual. The court, however,

the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Courts have held that searches which grossly exceed the scope of a search warrant or which involve a flagrant disregard for the terms of a warrant violate the Fourth Amendment and justify blanket suppression. See, e.g., United States v. Medlin, 842 F.2d 1194, 1199 (10th Cir. 1988)(warrant executed in "flagrant disregard" of its terms transformed valid warrant into general search in violation of Fourth Amendment, requiring blanket suppression); Klitzman, Klitzman and Gallagher, 744 F.2d 955, 960-61 (3rd Cir. 1984)(preliminary injunction for return of privileged documents upheld based on over broad search of law office).

There is no assertion in this case that the seized materials fell outside the scope of the warrant, only that the seizure of any privileged communications was per se unreasonable. There is no evidence to establish that the search team grossly exceeded the scope of the warrant in this case, nor that the search was overly broad as to give rise to constitutional concerns. Additionally, the government took steps to address the attorney-client issue including narrowing its list of items to be seized, having the search conducted by agents who were not assigned to the investigation or prosecution team, assigning a "Privilege Attorney" to answer questions during the search who would have no role in the investigation or prosecution, not allowing searching agents or the Privilege Attorney to reveal any of the seized documents to any member or the investigation/prosecution team, and finally, conducting multiple privilege reviews by the Privilege Attorney along with another Privilege Attorney where other procedures proved

---

finds this argument unpersuasive as the policy manual only advises that consideration should be given to obtaining information through a subpoena, and the manual is not binding, nor does it confer any enforceable rights on defendants.

5

ineffective in identifying privileged seized materials.

Defendants also attack the affidavit upon which Magistrate Wells based her probable cause determination for the warrant by first stating that the affidavit misled Magistrate Wells in not alerting her to the extent of attorney-client and work product issues that would stem from the warrant, and secondly by asserting that Agent Curtis provided false information in the affidavit. The Supreme Court has held that in order to support a challenge of veracity of an affidavit supporting a search warrant, a defendant must make a substantial showing that the affiant made a "false statement knowingly and intentionally, or with reckless disregard for the truth" to the reviewing magistrate. Franks v. Delaware, 438 U.S. 154, 155-56 (1978). In reviewing the terms of the affidavit, however, wherein it clearly states that the premises to be searched is a law firm and that "the items to be searched may include items which are protected under the attorney-client privilege or the attorney work product doctrine," it is clear that the information given to Magistrate Wells clearly put her on notice concerning the potential privilege issues. Further, Magistrate Wells would have been aware of the government's intended use of a team of agents and prosecutors in the search who would have no involvement with the on-going investigation to address any privilege issues. Therefore, there is no "substantial preliminary showing" required by Franks to warrant complete suppression. Without specific evidence to support the allegations that Magistrate Wells was misled, the Franks challenge is not ripe for consideration by this court.

  **B.**  **Use of a Taint Team By the Government Does not Warrant Suppression of all Seized Evidence.**

Defendants argue that the government's use of taint teams to protect against the improper

intrusion into attorney-client privileged information constitutes a *per se* intrusion on the attorney-client privilege. While courts have expressed mixed reviews on the appropriateness of the use of taint teams in addressing attorney-client privilege issues, the use of a taint team itself does not constitute an intrusion warranting complete suppression of all evidence seized. This is especially true in cases such as this case where the government has already obtained the physical control of potentially privileged documents, the legality of the seizure of documents was not initially challenged, and there are large volumes of documents at issue. See, e.g., In re Grand Jury Subpoenas 04-124-03 and 04-124-05, 454 F.3d 511, 522-23 (6th Cir. 2006); United States v. Winters, no. 06-cr-54, 2006 WL 2789864 at *2 (S.D.N.Y. 9/27/06); Hicks v. Bush, 452 F. Supp. 2d 88, 103 n. 12 (D. D.C. 2006).

The taint team at issue in this case was formed prior to the search and was available for privilege determinations during and throughout the search. The government has stated that the documents all went through several levels of review by the taint team according to the classes of privilege of the documents as designated by the agents, the taint team attorneys and defendants' counsel. Finally, the government's use of a taint team was approved by a neutral and detached magistrate and as it was used in conjunction with a valid search warrant, the use of a taint team, in itself, does not warrant a blanket suppression.

      **C.**      **There Was No Violation of the Fifth Amendment Right to Due Process**

The Tenth Circuit has held that "[m]isconduct by law enforcement officials in collecting incriminating evidence may rise to the level of a due process violation when the misconduct is

7

outrageous enough to shock the conscience of the court. United States v. Kennedy, 225 F.3d 1187, 1194-1195 (citing Rochin v. California, 342 U.S. 165, 172-74, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (where police obtained evidence against the defendant by pumping his stomach, the Court determined the officers' actions offended the Due Process Clause). Other courts cited by the Tenth Circuit have concluded governmental misconduct in the form of a pre-indictment invasion of a defendant's attorney-client relationship may, under some circumstances, amount to a deprivation of the defendant's right to due process. See United States v. Schell, 775 F.2d 559, 562-63, 566 (4th Cir.1985) (holding defendants' due process rights were violated when their attorney represented them during grand jury proceedings, and then participated in their prosecution after indictments were issued in the same matter), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1498, 89 L.Ed.2d 898 (1986); United States v. Marshank, 777 F.Supp. 1507, 1521-23 (N.D.Cal.1991) (concluding pre-indictment intrusion into the attorney-client relationship was so pervasive and prejudicial as to warrant dismissal of the indictment where the defendant's attorney participated in the investigation of his client and the government knowingly assisted the attorney in violating the attorney-client privilege and hid the violation from the court).

The cases cited above involve situations in which the government knowingly facilitated and secured the cooperation of a defendant's former attorney to violate the privilege and assist the government in its prosecution of his former client. The present case does not involve situations similar to those cited by the various courts and the government's conduct here is not one where the government has knowingly violated the attorney-client privilege sufficient to "shock the conscience of the court" and rise to the level of a Fifth Amendment due process violation. Thus, this court finds that the Fifth Amendment does not provide a basis for

8

suppression in this case.

> **D.      The Sixth Amendment Does Not Provide a Basis for Blanket Suppression.**

The Tenth Circuit has held that "[g]overnment intrusions into pre-indictment attorney-client relationships do not implicate the Sixth Amendment." United States v. Kennedy, 225 F.3d 1187, 1194 (10th Cir. 2000)(citing United States v. Lin Lyn Trading, Ltd., 149 F.3d 1112, 1117 (10th Cir. 1998).  The right to counsel guaranteed under the Sixth Amendment attaches at or after the beginning of formal proceedings, whether through a formal charge, hearing, indictment, information or arraignment.  See, Lin Lyn Trading, 149 F.3d at 1117.  The Tenth Circuit further stated that the seizure of attorney-client communication prior to indictment does not become a Sixth Amendment violation once an indictment is filed.  Id.

The documents which defendants seek to suppress were seized from Drage's law office over three years before the indictment was returned.  Thus, the Sixth Amendment does not provide a proper basis for suppression as the alleged attorney-client communications at issue do not involve confidential communications against pending criminal charges.  See, United States v. SID Future Health, Inc., 464 F. Supp. 2d 1027, 1047-48 (D. Nev. 2006).

Defendants seek complete suppression of evidence contending that the government intentionally intruded on attorney-client privilege and as a result, the government must now show that the privileged information was not passed to the prosecution.  In order to rebut the presumption of information passing to the prosecution, the government must show the existence of suitable safeguards to preserve privilege and prevent dissemination of privileged materials to

the investigating authority. See, United Statev v. Neill, 952 F. Supp. 834 (D.D.C. 1997). The attorney client privilege at issue here is held by defendants Wilson and Lester Mower whose attorney is defendant Drage.[2]

The prosecution has not had unfettered access to the documents and computer data. The government stated that the prosecution team received one set of documents from the imaged computer data. These documents were produced by a search and retrieval from a member of the search team and additionally reviewed by one of the Privilege Attorneys prior to being handed over to the prosecution team. Defendants have failed to make a showing of bad faith on the part of the government attorneys. As discussed above, the government put a number of safeguard measures into place to protect privileged materials which may have been seized. The handling of the seized documents and computer evidence while generally appears to have been careful, measured and within the scope of the warrant issued in this case, was not perfect. As pointed out by the defendants, there were some occasions where privileged documents appear not to have been accurately identified as such and returned to defendants in a timely manner. Defendants have failed to provide support for their argument that the seizure of privileged documents in this case warrants the suppression of *all* the evidence seized in the search, rather than the suppression of those documents as to which defendants can establish the privilege. Thus, this court finds that while the search was constitutional, and that defendants rights under the Fourth, Fifth and Sixth Amendments were not violated such that all the documents seized should be suppressed, defendants have a right to suppress documents the prosecution intends to use for which a

---

[2] Defendant Eva Jeanette Mower also joined in the motions to suppress, but she has not taken the position that she is a current or former client of defendant Drage and therefore holds no privilege and has no standing to challenge on Fourth Amendment grounds.

privilege can be established.

### III. CONCLUSION

Having reviewed the motion and the government's response, the Court denies the defendants' motion to dismiss. Because there is some question as to whether documents passed to the prosecution team which might be considered privileged and to require defendants to review all documents would constitute an undue burden, the Court will suppress any privileged evidence which the government seeks to introduce at trial. This suppression will be determined by the Court on a document by document basis. Consequently, the defendants' Motion to Suppress Evidence Obtained in the Search of the Premises Located at 4766 Holladay Boulevard, with the exception of any privileged evidence as determined by the Court, is DENIED.

DATED this 6th day of October, 2010.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT