THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:09CR460 DS |
| Plaintiff, | ) | |
| | ) | AMENDED ORDER ADDRESSING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO ENFORCE PLEA AGREEMENT |
| | ) | |
| LESTER HEMMERT MOWER and ADRIAN ANGUS WILSON | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

[1]Before the Court is Defendants' Motion to Dismiss or, In the Alternative, To Enforce Plea Agreement. The basis for this motion is Defendants' claim that a plea agreement was reached between the Defendants and the government, that this agreement was represented to the Court, and that the government later rescinded the agreement. Defendants now move to have the plea agreement, which counsel for both sides represented to the Court had been reached on October 21, 2014, presented to the Court for consideration.

## I. RELEVANT FACTS

Beginning October 20, 2014, the parties were engaged in plea negotiations prior to a scheduled jury trial. The negotiations arose as a result of a hearing several days earlier, where the government asked the Court to conduct what was described as a Lafler/Fry colloquy referring to *Lafler v. Cooper*, --U.S.--, 132 S. Ct. 1376 (2012), and *Missouri v. Frye*, --U.S.--, 132 S. Ct. 1399 (2012), to determine before trial if each "defendant has had sufficient advice of counsel

---

[1] This is an amended order which revises wording in the middle of page 10 to add "allegedly" to the sentence beginning "The government cannot now repudiate ..." and on page 11 in the first full paragraph to add language to sentence one and two.

regarding" his rejection of "the proposed plea agreement in this case." (Dkt 569 at 2.) That led defense counsel at the time to query what "offer" the government was referring to, as they were not aware of any offer made by the government.

On the morning of trial, October 20, 2014, just as the court was preparing to take the bench to commence jury selection, counsel appeared at chambers to advise the court that serious negotiations were underway that may result in resolving the case. The court encouraged counsel to continue to work to resolution and the court advised counsel it would continue jury selection for a short time to allow counsel to further negotiate. The parties then met the morning of October 20, 2014 to work out the material terms of a plea agreement. At approximately 2:00 p.m., the government and defense counsel met with the Court in chambers to advise that the parties were "very close to a resolution and … were, as [government counsel] put on the record, … negotiating in good faith" so that neither had any objections to the jury pool being held another day. (10/21/2014 AM Hrg. 4:4-10.) On October 21, 2014, government counsel stated at the 10:00 a.m. hearing that since Defendants had not responded to the "firm offer clearly laid out to them yesterday afternoon" … the "deal has been withdrawn." (Id. 7:17-19.) The Court recessed and directed the parties to continue to try and work things out by 2:00 p.m., and "[i]f you can't, we're going to assemble tomorrow morning to empanel a jury." (Id. 11:9-11.)

Following the 10:00 a.m. hearing, the parties continued discussion toward reaching an agreement. Later that afternoon on 10/21/2014, government counsel and defense counsel appeared before the Court in chambers, shook hands and confirmed to the Court that "there has been a settlement as to" Defendants Mower and Wilson with an 11(c)1(C) plea agreement which the Court indicated it would accept. (10/21/2014 PM Hrg. At 3.) Because a resolution had been reached as to Mower and Wilson, the government asked the Court to set a later hearing for 4:30

p.m. to take their pleas. (Id. at 10.) In reliance on counsels' representations that an agreement had been reached, the Court dismissed the jury. At the 4:30 hearing, the Court took the bench with the clear understanding and representation that the court had been "advised by all counsel that the case is resolved as to Defendants Mower and Wilson." (Id. at 11.)

After the court issued its ruling continuing the trial as to Drage, the court recessed to await the appearance of Mower and Wilson's attorneys. It wasn't until the court resumed the hearing that the government raised the fact that "there may be an impasse." (Id. at 13.) The Court responded: "Impasse? Well that – this is certainly different than anything that was represented to me." The Court expressed, "There is no jury coming in tomorrow … [b]ecause my understanding was it was resolved and all counsel indicated to me and I have ruled accordingly." (Id. at 17-18.) The Court's order dated October 21, 2014, and filed October 22, 2014, stated that the court had been "advised by all counsel that the case is resolved as to Defendants Mower and Wilson." (Dkt 584.) The government did not object to this order and has not sought to correct those statements.

On October 23, 2014, Defendants filed their Motion to Dismiss for the reasons stated therein. (Dkt 587.) On October 30, 2014, the government filed its "notice of its withdrawal of plea offers previously extended" to Defendants. (Dkt 589.)

## II.  ANALYSIS

Defendants argue that the Plea agreement reached in this case, as represented to the Court, should be presented to the Court pursuant to contract principles. Federal law is clear that contract principles govern and inform the plea bargaining process. *U.S. v. Frownfelter*, 626 F.3d

3

549, 554 (10th Cir. 2010). Thus, the courts look to contract principles in order to decide whether or not a plea agreement should be enforced. *See id.*

### A. Constitutional Issues

Courts have generally used *Mabry* to instruct on issues relating to plea agreements. *See Mabry v. Johnson*, 467 U.S. 504, 510 (1984). However, this case is distinguishable from *Mabry* and as such *Mabry* does not control in this instance. The Court in *Mabry*, decided the question of "whether a defendant's acceptance of a prosecutor's proposed plea bargain creates a constitutional right to have the bargain specifically enforced." *Id.* at 505. In *Mabry*, a defendant had been caught burglarizing a home; during which shots were fired leaving one of the residents dead and others injured. *Id*. The prosecution proposed an initial plea agreement where the burglar would have his accessory to murder charge run concurrently with his other charges. *Id.* at 506. The burglar accepted the offer, however, when the burglar's attorney attempted to inform the prosecution about the acceptance, the prosecution withdrew the offer stating there had been a mistake and offered a second less favorable plea deal. *Id.* After a mistrial the defendant accepted the second deal. *Id*. Despite claims by the burglar that the first plea deal should control his sentence, the Supreme Court upheld the second deal's terms. *Id.* at 511. It did so because the defendant had intelligently and voluntarily entered into the deal. *Id.* at 510.

Defendants' case is distinguishable because the defendants never agreed to a second plea deal—only the first. This factual difference presents an entirely different legal posture. In *Mabry* the question was whether an initial plea offer could be enforced when the plaintiff had accepted a second plea offer. In the present case, the issue is whether the Court can consider a plea deal that the parties had agreed to and had represented to the Court as agreed upon. The former question was answered negatively; an initial plea deal could not be enforced when a second was accepted.

The latter question is answered in the positive; a court can consider a plea deal that was agreeable to both parties and was represented to the Court as settled. Because of these clear distinctions, *Mabry* does not apply and is not controlling in this case.

As both sides recognize in the pleadings, the defense does not bring this motion claiming there were constitutional violations, to which the *Mabry* court speaks.  Rather, Defendants argue that under the principles of contract law an agreement was made.  Additionally, Defendants do not seek to enforce a plea agreement with this Motion.  Defendants seek to have the Court hear the plea to which both parties agreed.

### B.   Contract Issues

The plea negotiation process involves two parts.  First, it involves the contractual arrangement or bargain (i.e., what the defendant is giving up and getting in return), and second, the supervision and approval of the Article III court.  See generally Fed. R. Crim. P. 11.  Rule 11 contemplates this division by directing on the one hand that the "court must not participate in these discussions" regarding the "plea agreement," but also that the Court must step in at the end of negotiations to ensure, by addressing the defendant him or herself personally, that the "plea is voluntary," to "determin[e] the factual basis for a plea," and to "advis[e] and question [] the defendant … under oath … [to] determine that the defendant understands" certain things as provided in Fed. R. Crim. P. 11.

Courts also recognize and follow the well-established principle that "[p]lea agreements are interpreted according to general principles of contract law," and any "[a]mbiguities in plea agreements are construed against the government." *Frownfelter*, 626 F.3d at 554-55 . The issue in this case is whether in fact an agreement had been reached between Defendants and the government.  Under principles of contract law, a contract is enforceable where there is "a

5

meeting of the minds of the parties … with sufficient definiteness to be enforced." *On the Planet v. Intelliquis Intern., Inc.*, No. 2:99CV-324, 2000 WL 33363260, at *4 (D. Utah May 23, 2000)(enforcing settlement agreement in civil case). The court states "[i]t is not necessary that the contract provide for every collateral matter or possible contingency. Rather, the requirement is that 'the parties themselves must have set forth in sufficient definiteness at least the essential terms of the contract.'" *Id*. (citation omitted). In the context of contract law, "[m]aterial terms are those terms essential to the enforcement of the contract," not one that a party considers material. *See First Technology Capital, Inc. v. JPMorgan Chase Bank, N.A.*, --F.Supp.3d--, 2014 WL 5093395, at *9 (E.D. Ky. Oct. 9, 2014) (*quoting C.A.F. & Assocs. v. Portage, Inc*. 913 F.Supp.2d 333, 343 (W.D. Ky. 2012).

It is important to note the meeting of the minds test does not require that both parties agree perfectly on every point, otherwise there would be no contract disputes. "Meeting of the minds" requires only that the parties manifest their agreement. Oliver Wendell Holmes Jr., *The Path of the Law* 10 Harv. L. Rev. 457, (1897). In the case of a plea agreement, "material terms" can be established by the existence of two parts: the contractual arrangement and the supervision and approval of the court. The parties' dispute centers on paragraph 11 in the factual recitation which was drafted after the plea agreement was reached. The government argues that its version of paragraph 11 is material and Defendants' actions in objecting to the paragraph demonstrate that it was material to the agreement as well. However, that does not establish materiality. Defendants objected to the proposed paragraph 11 because the language in paragraph 11 went beyond that to which the defendants could truthfully testify. The government states that they rely on paragraph 11. That reliance is not important to the question as to whether the factual recitation was material. Factual recitations are not necessarily material; the only material terms

are ones that are integral to the contract's enforcement. *Onewest Bank, FSB v. Farrar*, Case No. 12-00108 ACK-KSC, 2013 WL 6175321, at *10 (D. Haw. Nov. 19, 2013). Material terms to the plea agreement can be established by what is necessary for a plea agreement to be accepted by a judge. Thus, this plea bargain can be enforced without paragraph 11 of the factual recitation and therefore, the paragraph is not material.

An agreement need not be reduced to writing to be enforceable. *See e.g., United States v. Graham*, 704 F.3d 1275, 1278 n.5 (10th Cir. 2013)(enforcing a Rule 11(c)(1)(C) plea agreement that "was not reduced to writing"). *See also Ex Parte Yarber*, 437 So. 2d 1330, 1336 (Ala. 1983) ("A plea bargain is a matter of honor between opposing counsel. It is not reduced to writing."). Defendants' counsel and government counsel met with the Court on October 21, 2014 in chambers and represented to the Court that an agreement had been reached and that paperwork would be finalized to allow the Court to take Defendants' pleas later that day. This understanding was later memorialized by an order of the Court dated the same day wherein the Court stated, "[h]aving considered the arguments of counsel as to Defendant Drage, and being advised by all counsel that the case is resolved as to Defendants Mower and Wilson, the Court finds Mr. Negrete's arguments compelling with respect to his motion to continue the trial for the Defendant Drage." (Dkt. 584.) It was the Court's understanding that the parties had reached an agreement as to the essential and material terms of the bargain.

The government cites to a number of cases where courts declined to enforce a plea agreement before it was accepted by the court or before it was relied on to the defendant's detriment. Nevertheless, the authority the government cites to support the idea that a plea agreement is *only* enforceable once the court gives its approval is no longer good law. In support of its position that a plea agreement cannot be binding before it is accepted by the court, the

government asserts that in *United States v. Norris*, 486 F.3d 1045, 1049 (8th Cir. 2007), the Eighth Circuit held that "either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court." What the government failed to include is that *Norris* was relying on and quoting *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir.1980) in its opinion that plea agreements are always fluid until they have been accepted by the court.

Counsel are expected to not mislead the Court on what is the current state of the law and this omission is important because the cited language in *Ocanas* has been specifically rejected by the court that decided it. *United States v. Grant*, 117 F.3d 788, 791 (5th Cir. 1997) ("we held [in *Ocanas*] that either party to a plea agreement could modify its position until the plea and plea bargain were accepted by the court. This reasoning is contrary to our decision in *United States v. Foy,* 28 F.3d 464 (5th Cir.), *cert. denied,* 513 U.S. 1031, 115 S.Ct. 610, 130 L.Ed.2d 520 (1994)"). Even more convincingly, the language in *Ocanas* and *Norris* which the government's brief referenced, is subverted by the Supreme Court's decision in *United States v. Hyde. See Grant*, 117 F.3d at 791 n.4.  In *Hyde*, the Supreme Court decided that a defendant who sought to withdraw his guilty plea before the plea agreement was accepted or rejected by the court was barred from withdrawing unless he had a "fair and just reason" to justify that breach of agreement. *United States v. Hyde*, 520 U.S. 670, 671 (1997).

The Supreme Court of Alabama examined a similar question as the one presented here in *Ex Parte Yarber*, 437 So. 2d 1330 (Ala. 1983).  The Alabama Court examined "[w]hether a defendant can compel the enforcement of a plea agreement, broken by the [government], where he had not yet pleaded guilty, or otherwise relied on the agreement to his disadvantage," such as pleading guilty or offering information in reliance on the Plea Agreement.  *Id.* at 1333. In

8

*Yarber*, as in the instant case, there was no written plea bargaining agreement ever signed by the defendant or any of the attorneys. *Id.* at 1332. In its discussion, the *Yarber* court noted the Supreme Court's recognition of the validity, desirability and enforceability of a negotiated plea. Id. at 1333 (citing *Brady v. United States*, 397 U.S. 742 (1970) and *Santobello v. New York*, 404 U.S. 257 (1971)). The court further referenced *Santobello* emphasizing that plea bargaining "is an essential component of the administration of justice" and "[p]roperly administered, it is to be encouraged." *Yarber*, 437 So. 2d at (1334) (*quoting Santobello* 404 U.S. at 260-61. The *Yarber* court determined that "once the state chooses to make an agreement, it should not be allowed to repudiate that agreement with impunity." *Id*. at 1335. To do so would serve to weaken the plea negotiating system which is not only an essential part of the administration of justice but also a highly desirable part. *Id*. (quoting *Santobello*, 404 U.S. at 260-261).

      Nevertheless, the government argues that the relief Defendants seek is contrary to Rule 11 and to the rulings of the Tenth Circuit because the Tenth Circuit has held that the court must approve the plea agreement. *United States v. Novosel*, 481 F.3d 1288, 1291-92 (10th Cir. 2007). This court disagrees. The relief Defendants seek is not contrary to Rule 11. As in *Yarber*, Defendants do not claim that the plea agreement is enforceable or binding without the Court's approval. Rather, Defendants request "the tender of the negotiated plea[s], with [their] attendant terms, to the [Court] for its consideration." *Yarber*, 437 So. 2d at 1336.

      Similarly, in *Novosel*, 481 F.3d at, 1292 the defendant entered a plea agreement which required the court's approval. Upon submission, the district court would not accept the plea without an appeal waiver being added to the agreement. After the plea agreement was modified to include the appeal waiver the defendant accepted the plea and the court approved the agreement. The defendant thereafter tried to appeal his conviction stating that he had agreed to

9

an initial bargain that did not include an appeal waiver provision and he was entitled to receive the benefit of that first bargain. *Id*. at 1289, 1293. The instant case is distinguishable. The defendants in this case are not arguing that the court is bound, regardless of Rule 11, to accept and enforce their plea agreements. Rather, they seek to enforce the material terms of the agreement they reached with the government and to have those agreements, with their essential terms, presented to the Court for the Court to either accept or reject.

This Court finds that the reasoning in *Yarber* is sound and is consistent with the law of this circuit. The government made an offer to the Defendants which they accepted. The parties agreed to the essential terms and both sides represented to the court that a settlement had been reached. The parties even met in chambers in front of the judge, shook hands, and stated that an agreement had been made. The government cannot now repudiate that plea agreement because Defendants cannot agree to an after-included factual recitation that contains allegedly false statements. By meeting in front of the judge and shaking hands, this was tantamount to the judge accepting a plea in court. Public policy should not allow the government to withdraw the deal after an agreement had been reached and represented to the court to be final with only the "tweaking of a couple sentences" left to be done.

The parties' agreement was an 11(c)1(C) plea agreement. In such a case, the Court only has the discretion to accept or deny the plea agreement as presented. The court has no power to revise it. Hence, validating the government's attempt to modify the agreed upon terms after offer and acceptance is presented to the court, albeit informally, is not allowed. The dispute between the defendants and the government arose after the agreement was reached and represented to the court, and consisted of one paragraph of the factual recitation. This paragraph concerned only what the defendant would say in response to the mandate of Rule 11(b)(3).

Because it is the Court's duty to determine during the plea that there is a factual basis, the Court could not accept a recitation of the facts that was contrary to what defendants believed to be the truth.

The Defendants allege that they agreed in the negotiations that they would testify truthfully at the trial of their co-defendant Nathan Drage. Yet, Defendants allege that the government wanted more after the agreement was reached and after all counsel shook hands in front of the judge representing that they had reached a deal. Insisting that Defendants testify according to facts provided to them by the government borders on prosecutorial unprofessionalism and bullying. In our system, government attorneys must be held to a high standard and allowing the government to make its insertion after the agreement was reached would validate unethical conduct and weaken citizens' respect for our judicial system. Defendants' briefs reveal that the government was attempting to supplement the plea agreement to obtain evidence against Drage that the defendants knew to be false.

## III.  CONCLUSION

The parties in this case reached an agreement as to the material terms of a plea agreement and represented as much to the Court.  There is persuasive—even binding authority—that authorizes the Court to enforce plea agreements that have not yet been reduced to writing and/or presented in open court.  Defendants do not bring this motion claiming constitutional violations, but rather claim that under the principles of contract law, an agreement was made.  The parties made an agreement and manifested assent, thus completing a contract.  The government cannot now repudiate this agreement because they were not able to obtain the evidence they sought to use at trial against Drage.  Therefore, having reviewed the motion and the government's response, the Court grants the defendants' motion and orders that the plea agreement be presented to the court for its Rule 11 Colloquy.

DATED this __18th___ day of  February, 2015.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT